UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOSHUA LINER,

                                        Plaintiff,

  v.                                                          9:08-CV-1386
                                                              (TJM/ATB)

BRIAN FISCHER, Commissioner;
DALE ARTUS, Superintendent;
S. GIGUERE, Law Library Officer;
T. SWEET, Corrections Officer; and
JOHN DOE,


                                        Defendants.

_____

JOSHUA LINER, Plaintiff *pro se*
BRIAN J. O'DONNELL, Assistant Attorney General

ANDREW T. BAXTER, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

        This matter has been referred to me for Report and Recommendation pursuant

to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).[1]  In this civil rights

complaint, plaintiff alleges that he was assaulted by defendant Giguere and

inappropriately touched by defendant Sweet.  As to defendants Fischer and Artus,

 plaintiff alleges violations of equal protection and due process, and claims deliberate

indifference to his serious medical needs.  Plaintiff also claims that his constitutional

rights were violated as part of conspiracies involving defendants Giguere, Sweet,

_____

        [1] The case was originally referred to the Honorable Gustave J. Di Bianco and was
assigned to me upon Judge Di Bianco's retirement on January 4, 2010.

"John Doe," and Artus.  Plaintiff seeks substantial monetary relief.[2]   Presently before the court is a motion for summary judgment pursuant to Fed. R. Civ. P. 56, filed on behalf of defendants seeking dismissal of the entire complaint, save for the excessive force claim against defendant Giguere.  (Dkt. No. 36).  For the following reasons, this court recommends that defendant's motion be granted.

## I.   Facts and Contentions

### A.   Facts

Plaintiff alleges that on September 26, 2008, he was headed to the law library at Clinton Correctional Facility ("Clinton") when defendant Giguere handcuffed plaintiff to perform a pat frisk.  (Compl. ¶ 6; Pl.'s Dep. p. 22).  Defendant Giguere allegedly found some "muslim oil" in plaintiff's pocket and splashed it in plaintiff's eye. (Compl. ¶ 6; Pl.'s Dep. pp. 24–25).  Plaintiff alleges that defendant Giguere then choked and kneed plaintiff, "causing testicle and rectum pain."  (Compl. ¶ 6; Pl.'s Dep. pp. 26–29).

During the frisk, plaintiff was made to face the wall, and plaintiff alleges that defendant Sweet planted a weapon in the folder of legal materials plaintiff had been carrying to the law library.  (Compl. pp. 7; Pl.'s Dep. pp. 21–22, 58).  As a result of

---

[2] Plaintiff seeks $250,000.00 in "compensation" and $250,000.00 in "emotional stress damages" from defendant Giguere; $250,000.00 in "compensation," $250,000.00 in "punitive damages," and $250,000.00 in "emotional stress damages" from the John Doe defendant; $350,000.00 in "compensation," $350,000.00 in "punitive damages," and $350,000.00 in "emotional stress damages" from defendant Sweet; and $250,000.00 in "compensation," $250,000.00 in "punitive damages," and a $250,000.00 "emotional stress payment" from defendant Artus. (Compl. pp. 7, 9, 13, 16).  Plaintiff does not specify what relief he seeks against defendant Fischer.  *Id.*

the alleged assault by defendant Giguere, plaintiff's eyes "were like real painful for a long period of time . . . maybe like a week," and he also had "a little pain in my back and ribs." (Pl.'s Dep. p. 31). Plaintiff alleges that he tried to get a medical evaluation on September 27, 28, 29, and 30, 2008, but was denied. (Compl. p. 15).

Plaintiff filed a grievance dated October 7, 2008, in which he "charged" defendants Giguere and Sweet with "deprivation of legal material," apparently because the legal material in the folder where the weapon was found on September 26, 2008, had not been returned to plaintiff. (Pl.'s Ex. A1, p. 4). Plaintiff requested an internal investigation and the return of his legal material. *Id.* The legal material allegedly consisted of "documents that was dealing with my habeas corpus"[3] (in the Southern District of New York), including trial transcripts relating to plaintiff's burglary conviction, and some papers pertaining to another inmate that plaintiff was assisting with his legal work. (Pl.'s Dep. pp. 43–45). Plaintiff claims that he "wasn't adequately able to deal with [his] situation because documents was [sic] missing, you know." (Pl.'s Dep. p. 44).

As a result of the weapon found in plaintiff's legal papers, a Tier III hearing was held on October 7, 2008. (Defs.' Ex. C). Plaintiff was found guilty of possessing a weapon and sentenced to 12 months loss of packages, commissary, and phone, 12 months in the Special Housing unit, and loss of 12 months of good time credit.

---

[3] *See Liner v. Artus*, No. 08-CV-5886, 2008 U.S. Dist. LEXIS 98558, 2008 WL 5114485 (S.D.N.Y. December 5, 2008).

(Defs.' Ex. C, p. 134).[4]  Plaintiff appealed the decision, and the decision was affirmed on November 18, 2008.  (Defs.' Ex. C, p. 133).

Plaintiff alleges that the September 26, 2008, assault was the result of a conspiracy between defendants Giguere and Sweet, with defendant Sweet acting as the "mastermind."  (Compl. ¶ 7, p. 11; Pl.'s Dep. p. 35–36).  Plaintiff alleges that before defendant Giguere allegedly assaulted plaintiff, defendant Sweet had touched plaintiff's genitals on two separate occasions during a frisk, once in July and once in August of 2008.  (Compl. pp. 10–11; Pl.'s Dep. pp. 39–40).  Plaintiff also complains that defendant Sweet "has a tendency to always come to the law library looking through [plaintiff's] legal work without probable cause . . . violat[ing] my legal work, looking through my stuff."  (Pl.'s Dep. pp. 38–39).

Plaintiff alleges another conspiracy among defendants Giguere, Sweet and the John Doe defendant, related to when the John Doe defendant allegedly "caused damages to [the] bulk of [plaintiff's] legal court documents" on July 17, 2008. (Compl. p. 8).  The John Doe defendant "plac[ed] property in the toilet . . . [caused] broken eye glasses and tore out the . . . head phone cord [from the socket]."  (Compl. p. 8).

Plaintiff spoke with the superintendent of Clinton, defendant Artus, on July 17, 2008, just after the John Doe defendant had searched plaintiff's cell.  (Pl.'s Dep. p.

---

[4] Defendants did not number the pages in the exhibits attached to their summary judgment motion, so the court will refer to the exhibit and the page number assigned by the Case Management/Electronic Case Filing ("CM/ECF") system.

37).  Defendant Artus failed "to reimburse [plaintiff] or punish the accused
[corrections officers] even after observing the impact of damages seconds later."
(Compl. p. 14).  Plaintiff alleges that defendant Artus "receiv[ed] the magnitude of
complaints regarding law library staff, defendants Sweet and Giguere [and that] the
inadequacy of supervision contributed to more damages."  (Compl. p. 14).

    **B.**    **Causes of Action**

Plaintiff asserts the following causes of action as to defendant Giguere: (1)
"assault battery, [sic] deliberate indifference assault to [hinder usage] of law library
service [and] to delete grievances or complaints to superior officials," (2) "conspiracy
to violate federal rights secured under U.S. Constitution [and] violate section 42
U.S.C. [§]1983," and (3) "deprivation of legal property [and] deliberate indifference,
U.S. Constitutional violation recognized under section 42 U.S.C. [§] 1983."  (Compl.
pp. 5, 7).[5]

Plaintiff asserts the following causes of action as to defendant Sweet: (1)
"sexual assault . . . copies of the grievance and the sergeant complaints along with
federal law suit [sic] forms were confiscated [and] stalking," (2) "conspiracy . . . to
violate section 42 U.S.C. [§] 1983 . . . destroying . . . legal papers . . . threaten[ing] to
retaliate and his purpose was to get me off population as the defendant [Sweet] placed
contraband weapon in my legal folder," (3) "unlawful seizure and reading of legal

---

    [5] Plaintiff attached numerous pages to his complaint form which are not numbered.
These pages assert facts and causes of action against each defendant separately.  For ease of
reference, the court will refer to material by the page number assigned by the CM/ECF system.

court documents . . . illicit reading of [plaintiff's] legal papers [and] deprivation [of] legal papers," and (4) "retaliation."  (Compl. pp. 10–12).

Plaintiff asserts the following causes of action as to defendant Artus: (1) "deliberate indifference, discrimination practices of [hiring] guards to exclude minority race[s such as] blacks and hispanics from [working at] the facility to engage in deliberate indifference acceptance," (2) "gross negligence, and failing to properly supervise subordinates under his command," (3) "taking of legal documents, and reading legal documents, unauthorize [sic] search and seizures [sic] no probable cause no therapeutic supervision just doing what they want at random . . . condone [sic] of food deprivation, threats without adequate security protection, unjust favoritism," (4) "violations of due process of law during I.D.C.[6] hearing," (5) "discrimination of equal protection clause, [different] treatment [of inmates] involving blacks and whites during the I.D.C. proceeding . . . whites get higher paid jobs [as inmates while] blacks [only] get to be porters [and are] taken out of food service to be replaced by [inmates who are] whites . . . [inmates who are] whites get to wear their hair within there [sic] fashion blacks have to cut their hair," (6) "conspiracy," and (7) "deprivation of medical evaluation [and] ongoing denials . . . of sick call."  (Comp. pp. 14–18).

Plaintiff asserts the following causes of action as to defendant Fischer: (1) "deliberate indifference, discrimination practices of [hiring] guards to exclude

---

[6] Institutional Disciplinary Committee (Pl.'s Dep. p. 17).  The court notes that this term is used in federal correctional institutions as one of the levels of appeal for a disciplinary infraction.  *See* 28 C.F.R. § 541.11.  The court assumes that plaintiff is referring to his disciplinary hearing.

minority race[s such as] blacks and hispanics from [working at] the facility to engage in deliberate indifference acceptance," (2) gross negligence and failing to properly supervise subordinates under his command . . . contributing to the cell vandalism search and seizure of legal material without probable cause, grievances sabotaged . . . first amendment violations . . . ongoing complaints involving grievance deletions also a magnitude of food denials, threats, law library exclusion with threats," (3) "First Amendment violations stemming from retaliation . . . complaints under investigation upon threats from guards [who] have sergeants retaliate [against inmates] with threats seeking to compel dismissal of complaints[,] guards planting weapon[s]/contraband in legal papers [during a] gimmick search[,] a paper trail reveals the evil intent," (4) "4th Amendment violations . . . of having me turn my back while [a corrections officer] search [sic] my legal work," (5) "challenges under federal and state law violations, due process of law during I.D.C. hearing . . . the untimely fashion as to commencing the proceeding, the prejudicial effect to value in time to there [sic] advantage, time extensions sought late and the inadequate assistance [from the one] who was appointed to retrieve these documents since the plaintiff was confined," (6) "discrimination of equal protection clause, surrounding difference of treatment involving [inmates who are] blacks and whites during the I.D.C. proceeding—white prisoners get to keep there [sic] programs, blacks get (30) thirty days during the tier II hearings . . . [inmates who are] whites get higher paid jobs blacks get to be porters [and are] taken out of food service to be replaced by white[s] . . . [inmates who are]

whites get to wear their hair within there [sic] fashion blacks have to cut their hair," and (7) "medical denials . . . [and] the administration had ignored the medical sick call referrals sent and the plaintiff was given no medical evaluation after assault battery incident 9/26/08." (Compl. pp. 19–22).

Finally, plaintiff asserts the following causes of action as to a John Doe defendant: (1) deliberate indifference . . . [for] damages to [the] bulk of legal court documents . . . placing property in toilet, persistent denial, with the accumulation of damages which protrude to broken eye glasses," (2) "deliberate damages toward medical glasses which has hamper[ed plaintiff's] ability to read also has caused severe strain on the eyes," and (3) conspiracy with defendants Theodore Sweet and S. Giguere to do property damages on or about July 17, 2008." (Compl. p. 8).

## II.   **Summary Judgment**

Defendants move for summary judgment as to the entire complaint except as to one claim. (Dkt. No. 36). Defendants concede that an issue of fact exists as to the excessive force claim against defendant Giguere, and thus do not move for summary judgment as to that claim. *Id.* Defendants also point out that plaintiff has neither identified nor served the John Doe defendant. (Dkt. No. 36). Plaintiff has responded in opposition to the motion. (Dkt. No. 50). For the reasons set forth below, this court recommends dismissal of all of plaintiff's claims except the excessive force claim against defendant Giguere.

Summary judgment is appropriate where there exists no genuine issue of

8

material fact, and based on the undisputed facts, the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272. "[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289

F.Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia, Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise th strongest arguments that they suggest")).  "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)). While a court "is not required to consider what the parties fail to point out," the court may in its discretion opt to conduct "an assiduous review of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

## III.   **Personal Involvement**

Personal involvement is a prerequisite to the assessment of damages in a § 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the

10

wrong.  *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.  See Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff does not allege that defendants Artus and Fischer were directly or personally involved in any of the incidents included in his complaint.  Even though Superintendent Artus was present at plaintiff's cell immediately following the July 17, 2008, search, he did not participate in it.  Plaintiff does not claim that defendants Artus and Fischer were directly involved with the alleged deprivation of a medical examination after the incident with Giguere near the law library.[7]

Neither defendant Artus or Fischer participated in plaintiff's Tier III hearing related to the discovery of the weapon, or its appeal.  (Def.'s Ex. C).  Because a Tier

---

[7] Plaintiff includes "deprivation of medial evaluation" and "medical denials" in his causes of action he asserts against defendants Artus and Fischer, but other than the conclusory claims of "deprivation" and "denial," the only connection he makes with either defendant is that the "administration had ignored the medical sick call referrals sent."  (Comp. pp. 15, 22).  As discussed below, conclusory claims such as these are not sufficient to establish personal involvement or state a claim for relief.

III hearing occurred, some sort of investigation of the incident with defendant Giguere took place; but plaintiff has not alleged that either defendant Artus or Fischer was personally involved at any point of the investigation, Tier III hearing, or appeal.[8]

Plaintiff's allegations as to defendants Artus and Fischer are that, because they are supervisors, they are responsible for the actions of all the corrections officers they supervise. As noted above, these defendants cannot be liable solely under a *respondeat superior* theory. Plaintiff's conclusory allegations that defendants Fischer and Artus failed to properly supervise employees is not enough to establish that either defendant was personally aware of any problems with plaintiff or at Clinton in general. Defendant Fischer is the Commissioner of DOCS, and does not work at Clinton. Defendant Artus is the Superintendent, responsible for the entire facility at Clinton. Neither defendant was involved with supervision at a level that would have

---

[8] Plaintiff's claim that defendants Artus and Fischer violated his due process rights also fails on the merits. Plaintiff states that the disciplinary hearing resulting from the discovery of a weapon in his legal papers violates the Due Process Clause. Plaintiff lost good time as a result of this disciplinary hearing. (Defs.' Ex. C, p. 134). Normally, when an inmate loses good time as a result of a disciplinary hearing, and a favorable decision on his due process challenges would necessarily result in the invalidity of that punishment, the court cannot consider a claim for damages on the issue until plaintiff proves that the determination has been reversed on direct appeal, by executive order, by a state tribunal, or by a petition for habeas corpus. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (adopting the "favorable termination rule" articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994)). This rule applies even when, as here, the inmate is given a "mixed sanction," involving both loss of good time and more restrictive conditions of confinement such as an SHU penalty. *Id.* The Second Circuit has held that an inmate who is given a "mixed sanction" can avoid the "favorable termination" rule of *Heck* and *Balisok* if he *forever waives* any consideration of the good time portion of his disciplinary sentence. *Peralta v. Vasquez*, 467 F.3d 98, 104–106 (2d Cir. 2006), *cert. denied*, 551 U.S. 1145 (2007). Plaintiff has made no mention of any waiver of the good time portion of his disciplinary sentence, and has submitted nothing that would indicate it has otherwise been reversed. Plaintiff appealed the decision of the Tier III hearing, but the decision was affirmed. (Defs.' Ex. C, p. 133).

effected how the other defendants interacted with plaintiff.  *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) (plaintiff must plead sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged).

Defendants correctly point out that plaintiff's claims against them center around plaintiff's dissatisfaction that they did not respond to his complaints as he wished. (Def.'s Mem. of L. 3).  In this case, the failure of defendants Fischer and Artus to investigate or act in response to plaintiff's letters of complaint is insufficient to state a claim against them.  *See Smart v. Goord*, 441 F. Supp. 2d 631, 642–643 (S.D.N.Y. 2006).

For personal involvement to be established based upon the supervisory official learning of the constitutional violation through a "report or appeal," the supervisor must be in a position to "remedy the wrong."  *See Harnett v. Bar*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (stating that the appropriate guiding principle for determining personal responsibility is determining whether the supervisory official was presented with an "ongoing" violation that he or she could remedy directly). Plaintiff's claims involve a number of discrete incidents that were over by the time any reports reached supervisory officials.  Defendants Artus or Fischer were not in a position to stop or prevent these alleged violations after the fact.  When asked during his deposition what defendant Fischer should have done, plaintiff responded, "Well, he could've moved me out of the facility."  (Compl. ¶ 4(c)(iii); Pl.'s Dep. p. 37).

13

However, plaintiff's complaint states that defendants Artus and Fischer "conspired and frame [sic] the plaintiff then sent him on transfer."  Plaintiff gives no reasons as to why he considers transferring out of the facility as part of a conspiracy on one occasion and the *failure* to move him out of the facility as evidence of conspiracy on another occasion.

Plaintiff also alleges that defendants Artus and Fischer deliberately excluded minorities correction officers from working at Clinton, which, in turn, effected the treatment of minority inmates.  (Compl. pp. 14, 18–19, 22).  Generally, a litigant has no standing to assert the constitutional rights of others.  *Carlen v. Department of Health Services of Suffolk*, 912 F. Supp. 35, 42 (E.D.N.Y. 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Thus, plaintiff cannot represent the interests of any other inmate, any employee, or potential employee of Clinton.[9]  Plaintiff makes no specific or plausible claim that he was personally deprived of any right or benefit on the basis of his race, and, therefore, fails to state a viable claim.  Therefore, for the reasons discussed above, plaintiff's causes of action as to defendants Artus and Fischer should be dismissed.

---

[9] The court also notes that corrections officers are assigned and transferred according to the needs of DOCS, through the Central Office Bureau of Personnel, "without involvement by the facility's superintendent."  (Aff. of Daniel F. Martuscello III, ¶¶ 3, 5–6).

## IV.   Access to Courts[10]

Plaintiff appears to also be asserting a claim that, because of the alleged deprivation of his legal papers, his access to the courts was hindered.  In order to establish a claim that a prisoner's right of access to the courts has been abrogated, *actual injury* must be shown.  *See Lewis v. Casey*, 518 U.S. 343 (1996).  *Lewis* also requires that the actual harm must be to direct or collateral attacks on the inmate's conviction, or to a challenge to the conditions of confinement.  518 U.S. at 355. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)).

Plaintiff's claim that he was unable to appropriately respond in his pending habeas corpus petition is not supported by the documents submitted in this case. Plaintiff filed his habeas corpus petition on June 30, 2008.  (Defs.' Ex. D, p. 5).  No answer was filed until October 28, 2008, which was *after* the alleged incident in September, when his folder of legal papers was taken.  At the time of the frisk, there was nothing plaintiff needed to respond to in his habeas case, and he had ample time to request replacement copies of the relevant trial transcripts.  The District Court for the Southern District of New York issued a decision dated December 5, 2008, denying

---

[10] Because plaintiff appears to state this claim against defendants Artus and Fischer, as well as against the other defendants, the court will examine the claim based on a denial of access to the courts on the merits as to all defendants.

plaintiff's petition for a writ of habeas corpus.  (Defs.' Ex. E); *see also Liner v. Artus*,

No. 08-CV-5886, 2008 U.S. Dist. LEXIS 98558, 2008 WL 5114485 (S.D.N.Y.

December 5, 2008).  The decision was based on the arguments plaintiff had raised in

his petition, and made no mention of any difficulty plaintiff had in pursuing his

claims.  *Id.*  The habeas court granted an extension of time for plaintiff to reply to the

respondents' opposition to his petition, but it was due to plaintiff having changed

facilities, not because he was having any difficulty accessing his legal papers.  (*See*

Defs.' Ex. D, p. 5).

During his deposition, plaintiff stated that as a result of the cell search by the

John Doe defendant on July 17, 2008, a "whole bunch of legal documents . . . were so

much destroyed I had to throw them away."  (Pl.'s Dep. p. 53).  However, when asked

what documents were destroyed, plantiff responded, "I can't recall what court

documents."[11]  *Id.*  Because plaintiff has failed to demonstrate any actual injury

resulting from the alleged destruction of his legal papers, the causes of action related

---

[11] To the extent plaintiff claims damage to his personal property, apart from his legal
papers, this claim should be dismissed.  Damage to personal property during random prison
searches is not a constitutional claim if an adequate post-deprivation remedy is available.  *See
Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("an unauthorized intentional deprivation of
property by a state employee does not constitute a violation of the procedural requirements of the
Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for
the loss is available").  "'New York in fact affords an adequate post-deprivation remedy in the
form of, *inter alia*, a Court of Claims action' pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, §
1700.3(b)(4)."  *Davis v. New York*, 311 Fed. Appx. 397, 400 (2d Cir. 2009) (quoting *Jackson v.
Burke*, 256 F.3d 93, 96 (2d Cir. 2001).  *Hudson v. Palmer* also holds that the prohibition against
unreasonable searches and seizures does not apply to a prison cell.  468 U.S. at 526.  Inmates
have no reasonable expectation of privacy in their cells.  *Willis v. Artus*, 301 F.3d 65, 67–68 (2d
Cir. 2002); *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005).  Thus any
claim that searches were performed without probable cause does not state a claim for relief.

16

to access to the courts should be dismissed as to all defendants.[12]

## V.  <u>Retaliation</u>

Any action taken by defendants in retaliation for the exercise of a constitutional

right, even if not unconstitutional in itself, states a viable constitutional claim.  *Franco*

*v. Kelly*, 854 F.2d 584, 588–90 (2d Cir. 1988).  In order to establish a claim of

retaliation for the exercise of a constitutional right, plaintiff must show first, that he

engaged in constitutionally protected conduct, and second, that the conduct was a

substantial motivating factor for adverse action taken against him by defendants.

*Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d

677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court

must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiffs

must set forth non-conclusory allegations.  *Id.* (citing *Dawes v. Walker*, 239 F.3d 489,

491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema*, *N.A.*, 534

U.S. 506 (2002)).

It has been held that "[o]nly retaliatory conduct that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights

constitutes an adverse action for a claim of retaliation." *Odom v. Dixion*, 04-CV-889,

2008 U.S. Dist. LEXIS 11748, *62–63 (W.D.N.Y. Feb. 15, 2008) (quoting *Davis v.*

---

[12] The court notes that plaintiff asserts three causes of action against a John Doe
defendant related to the search of plaintiff's cell in July 2008.  Plaintiff has neither named nor
served this defendant, which alone may be grounds for dismissal.  Fed. R. Civ. P. 4(m).
However, the court's analysis as to the claims asserted against the John Doe defendant would
remain unchanged, as discussed above, even were plaintiff to name and serve him.  Thus, the
claims against the John Doe defendant can be dismissed in their entirety.

*Goord*, 320 F.3d at 352).   In *Dawes v. Walker*, 239 F.3d 489, 492–93 (2d Cir. 2001), the Second Circuit recognized that there are situations in which *de minimis retaliation* is "outside the ambit of constitutional protection."  *Id.* (citing *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999)).

Plaintiff's complaint is filled with statements that defendants engaged in conduct "in retaliation."  However, plaintiff's statements are *completely* conclusory. He makes various statements regarding the enormous numbers of "grievances" and "complaints" that he files and then states that all of defendants' actions of which he complains were done "in retaliation."  When asked why defendants Sweet and Giguere were retaliating against plaintiff for his grievances, plaintiff does not provide a reason, but states, "Mr. Sweet and Mr. Giguere is not only a problem with me, it's a lot of inmates."  (Pl.'s Dep. p. 48).  These claims are the epitome of "conclusory" allegations that are "easily fabricated" and may be dismissed.   Thus, all plaintiff's claims of "retaliation" may be dismissed as to all defendants.

## VI. Conspiracy

Plaintiff claims his rights were violated as part of various conspiracies involving defendants Giguere, Sweet, "John Doe," and Artus.[13]  "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

---

[13] The court determined that the complaints as to defendant Artus should be dismissed for lack of personal involvement, as discussed above.  Due to the general way that plaintiff alleges claims as to all defendants, the court will include defendant Artus in its discussion of the merits of plaintiff's claims of conspiracy.

dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (citing *Dwares v. City of N.Y.*, 567 F.2d 551, 553 (2d Cir. 1977). Similar to his claims of retaliation, plaintiff's claims of conspiracy are conclusory and lack any evidence to support them.  Accordingly, plaintiff's conclusory allegations of conspiracy should be dismissed as to all defendants.

## VII.   Sexual Harassment

The Eighth Amendment protects an inmate from the "unnecessary and wanton infliction of pain." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (quoting *Whitely v. Albers*, 475 U.S. 312, 319 (1986)).  In order to violate the Eighth Amendment, the "punishment" must be "objectively, sufficiently serious," and the official must have had a "sufficiently culpable state of mind." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." *Boddie*, 105 F.3d at 861.  The plaintiff in *Boddie* was also claiming and Eighth Amendment violation based upon allegations of sexual abuse. *Id.*  The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may be potentially be the basis of state tort actions.  But they do not involve a harm of federal constitutional proportions . . . ." *Id.*

19

In this case, plaintiff alleges that defendant Sweet twice conducted an improper frisk that rose to the level of sexual harassment when defendant Sweet allegedly touched plaintiff's crotch.  Pursuant to *Boddie*, allegations such as those made by plaintiff do not rise to the level of constitutional violations regardless of the impropriety of the action.  *Id.*  Thus, the claim against defendant Sweet based on sexual harassment should be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 25) be **GRANTED**, and the complaint **DISMISSED WITH PREJUDICE** as to defendants Brian Fischer, Dale Artus, and Theodore Sweet.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: August 4, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge